IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 05-345 (RMC) |
| | ) | |
| HUGH TILGHMAN | ) | |
| | ) | |

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Hugh Tilghman, through undersigned counsel, hereby respectfully submits this memorandum in aid of sentencing pursuant to Federal Rule of Criminal Procedure 32. Based on all the sentencing factors in this case, including the United States Sentencing Guidelines, Mr. Tilghman respectfully asks the Court to sentence him to a period of incarceration under 46 months.

## BACKGROUND

On September 15, 2005, Mr. Tilghman was charged in a two-count indictment with one count of Unlawful Possession with Intent to Distribute 50 Grams or More of Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii), and one count of Simple Possession of a Controlled Substance, in violation of 21 U.S.C. §§ 844(a) .

On January 13, 2006, a Superceding Information was filed, charging Mr. Tilghman with Unlawful Maintenance of Premises to Manufacture, Distribute, Store and Use a Controlled Substance, in violation of 21 U.S.C. § 856(a)(2).

On January 19, 2006, Mr. Tilghman pled guilty to Count One of the Information in accordance with a written plea agreement.

1

## DISCUSSION

**I.    THE POST-BOOKER SENTENCING FRAMEWORK.**

Under Justice Breyer's majority opinion in Booker, the "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing. See 18 U.S.C. § 3553(a)(4)." United States v. Booker, _ U.S. __, 2005 WL 50108,*27 & n.1 (U.S. Jan. 12, 2005) (Breyer, J.). While holding that district courts should still consider the Guideline calculations and ranges for sentencing purposes, the remedial majority in Booker held that courts must consider all the purposes of sentencing set forth in 18 U.S.C. § 3553(a). Pursuant to Booker, therefore, courts must treat the Guidelines as but one, among several, sentencing factors.

Pursuant to 18 U.S.C. §§ 3562 and 3553(a)–which were explicitly endorsed by the Supreme Court in Booker–sentencing courts should consider the need for the sentence imposed:

>(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>(B) to afford adequate deterrence to criminal conduct;
>
>(C) to protect the public from further crimes of the defendant; and
>
>(D) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances

of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged.

>Pursuant to 18 U.S.C. § 3661, also expressly endorsed by the Booker majority:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

Section 3582 of Title 18 states that:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

Taken together, the directives of Booker, as well as Sections 3553, 3661, and 3582 of Title 18, make it clear that sentencing courts may no longer consider the Guidelines alone in determining the appropriate sentence. With respect to *departures* from the Guideline range, in particular, following Booker courts need not justify sentences outside the Guidelines by citing factors that take the case outside the "heartland." Rather, as long as the sentence imposed is reasonable and supported by the factors outlined in Section 3553, courts may disagree with the range proposed by the Guidelines in individual cases and exercise their discretion.

**II.     UNDER ALL OF THE RELEVANT SENTENCING FACTORS, MR. TILGHMAN SHOULD RECEIVE A SENTENCE OF INCARCERATION UNDER 46 MONTHS**

    A.     <u>Statutory Provisions</u>

Pursuant to the applicable statute, the maximum term of imprisonment is twenty years for this Class C felony. 21 U.S.C. § 856 (a)(2)

B.     Advisory Sentencing Guidelines

(I).     *Applicable Guideline Range*

The Probation Office, consulting the 2005 edition of the Guidelines Manual, has concluded that the Total Offense Level in this case is 23 and that Mr. Luna's criminal history category is I, resulting in an advisory Guideline range of 46-57 months.

C. Other Factors

As noted above, pursuant to 18 U.S.C. §§ 3562 and 3553(a) sentencing courts should consider the need for the sentence imposed 1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; 2) to afford adequate deterrence to criminal conduct; 3) to protect the public from further crimes of the defendant; and 4) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged. Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

*I. Nature of the Offense*

While Mr. Tilghman in no way wishes to diminish the seriousness of the offense, he notes that his offense conduct stemmed from a long-standing substance-abuse problem. As indicated in the Presentence Investigation Report (hereinafter, "PSR"), Mr. Tilghman first started using crack cocaine in 1987, at age 27. In addition to crack, Mr. Tilghman has periodically abused alcohol.

In exchange for small quantities of crack, to be used for personal use by himself and his wife, Mr. Tilghman allowed a group of neighborhood individuals to package and distribute larger quantities of the illicit substance from his home.  The men Mr. Tilghman allowed into his home at 49 K Street, NW were not related to Mr. Tilghman and were significantly younger than he. While Mr. Tilghman initially permitted only packaging and storage to take place within the house, the situation got "out of hand," according to Mr. Tilghman, and the group of men started selling drugs from within, or around, his home. Mr. Tilghman found it increasingly difficult to control the men, as it were, and at one point even contacted the building manager seeking assistance. Mr Tilghman had no ability to predict, or to influence, the comings and goings of the group. By the time he was arrested during the execution of a search warrant in August, 2005, Mr. Tilghman had taken to closing himself into his bedroom while in his residence. Following his arrest–and the resulting stay-away order from 49 K Street, NW–Mr. Tilghman resided with relatives initially and in a half-way house towards the year's end. Though Mr. Tilghman urged his wife, Renee, to leave the home on multiple occasions, she was unable to find alternative housing. The two spoke on the phone each day, as Mr. Tilghman was concerned not only about

the housing situation but about his wife's overall mental and physical condition. As indicated in the PSR, Ms. Tilghman suffers from schizophrenia and is an outpatient at St. Elizabeth's Hospital. In December, 2005, when Mr. Tilghman had not heard from his wife for two consecutive days, he decided to "check in" on her at his old residence. Upon arriving at the home, officers arrived in conjunction with a second warrant and placed him, for the second time, under arrest for drug trafficking.

 Mr. Tilghman should not have turned a blind eye to the activities occurring in his home. He knew he should not have permitted the storage and packaging of illegal substances in his residence and, from the onset of this case, he has accepted responsibility for that conduct. As the PSR indicates, however, Mr. Tilghman has a very minimal criminal history–the most serious offense occurred 26 years ago and resulted in a sentence of probation–and no history whatsoever involving either violence or drug trafficking. Mr. Tilghman suffered from a serious substance abuse problem, which led him to make poor choices and engage in risky, and illegal, behavior. That said, his intention was never to participate, or play an active role, in larger drug dealing activities.  Given that the *quantity* of drugs involved in this case played a key role in determining Mr. Tilghman's Guideline range, it bears noting that Mr. Tilghman neither controlled, or was aware of, the specific quantities of the various substances. Mr. Tilghman and his wife are nearing fifty; they became involved in a situation they could not adequately manage, and Mr. Tilghman would ask the Court to consider the circumstances surrounding the offense when imposing its sentence.

 *II. Characteristics of the Defendant*

As set forth in the PSR, Mr. Tilghman is a 46-year-old man who has experienced his fair share of mental and physical difficulties. Despite his struggles with crack and alcohol through the years, and notwithstanding the emotional problems for which he was treated, Mr. Tilghman successfully completed high school, attended college for two years, and has worked fairly consistently during his adult life.

After withdrawing from Western Maryland College in 1979, Mr. Tilghman joined the Navy. He spent the next 12 years in the armed services. Following his honorable discharge from the Army, Mr. Tilghman joined the National Reserves. From the time of his discharge until the time of his arrest, Mr. Tilghman was steadily employed. While he changed jobs several times, and while some of his jobs entailed sporadic assignments, Mr. Tilghman consistently made a living and provided for his family.

As stated above, prior to this case Mr. Tilghman had had very few encounters with the criminal justice system. The criminal history he does have dates back many years and appears to be related to his substance abuse problems. Not only has Mr. Tilghman worked hard and led a crime-free life for the past several years; he has provided consistent care, love and support to his wife. As stated in the PSR and noted previously, Mr. Tilghman's wife suffers from schizophrenia and is currently receiving care at St. Elizabeth's Hospital. While Mr. Tilghman was not aware of his wife's medical condition prior to their marriage, he has stood by her in the 20 years since they wed.

III.  *Needs of the Community and Public*

For the reasons stated in Section II, were the Court to sentence Mr. Tilghman to a

significant period of imprisonment, his absence would cause great financial and emotional hardship to his wife. Especially in light of the fact that Mr. Tilghman has never spent time in jail or prison, a lengthy period of incarceration would not only be unnecessary in terms of sending a message but, because of his age and history, would be unduly punitive. While Mr. Tilghman needs treatment so as not to put his own health and well-being in danger, there is no indication that he posed, or would pose, a danger to the larger community.

## CONCLUSION

For the reasons set forth above, as well as for any others that it may deem fair and reasonable, Mr. Tilghman asks the Court to sentence him to a period of incarceration under 46 months. Such a sentence would be sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553.

A sentence of imprisonment longer than 46 months would serve neither a deterrent nor a rehabilitative purpose. To the contrary, a lengthy sentence of imprisonment would harm not only Mr. Tilghman, but his family.

Respectfully submitted,

A.J. Kramer
Federal Public Defender


_____/s/_____
Lara G. Quint
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Washington, D.C. 20004
(202) 208-7500 ext.12634